**EMMCO INSURANCE COMPANY et al., Appellants,**

v.

**J. W. BURROWS, Appellee.**

**No. 295.**

Court of Civil Appeals of Texas.

Tyler.

Oct. 5, 1967.

Rehearing Denied Oct. 26, 1967.

Ramey, Brelsford, Flock & Devereux, Tracy Crawford and Michael A. Hatchell, Tyler, for appellants.

Gordon Wellborn & Rex Houston, Vaughan O. Stewart, Henderson, for appellee.

DUNAGAN, Chief Justice.

Essentially, this is a suit to recover proceeds allegedly due under an automobile insurance policy as the result of a collision in Virginia involving the insured vehicle of appellee.

On January 8, 1963, appellee purchased a new 1963 GMC diesel truck. The truck was financed with Associates Discount Corporation. A policy of collision insurance on the truck was issued by Emmco Insurance Company.

Appellee used the truck in question in his business from the time it was purchased until June 15, 1965. On this latter date, the truck was involved in a collision in the state of Virginia from which this lawsuit resulted.

Appellee brought this suit against the insurer, Emmco Insurance Company, to recover damages to the vehicle in the amount of $13,500.00 as the fair market value of the truck, less $1,200.00 salvage value. Alternatively, appellee sought to recover (in accordance with the terms of the insurance policy) $10,500.00 as the reasonable cost of repairs to the truck, if it were found to be repairable.

The case was tried to a jury, which found (1) that the truck could not be repaired, and (2) that the reasonable cash market value of the truck in Virginia before the collision was $13,500.00 and $1,200.00 after the collision. The jury further found that, for the protection of the truck, it was necessary to tow it to Dallas and that a reasonable charge for such towing was $400.00.

On the basis of this verdict, the following judgment was entered against Emmco Insurance Company: (1) $12,300.00 as damages to the truck, (2) $400.00 as reasonable expenses for the protection of the vehicle.

In addition to the cause of action alleged against Emmco Insurance Company, appellee's third amended original petition also sought a "declaratory judgment action" decreeing that certain installment payments due the other defendants, Associates Discount Corporation or Associates Investment Company, were suspended in July of 1965 until the termination of the present suit. Such relief, as prayed for, was also awarded in the trial court's judgment.

The points of error will be discussed in an order different from that followed by the appellants.

We will first consider appellants' Point of Error No. 9 wherein it is alleged that "The trial court erred in overruling defendants' motion for continuance."

This case was set for trial in the court below for the week of June 6, 1966. On that date, appellants filed their first motion for continuance because of the absence of A. E. Gammon, Senior Claims Adjuster for

Emmco Insurance Company. This motion was controverted by the appellee. After hearing testimony on said motion, the same was overruled by the court. It was alleged in said motion that Gammon was unable to appear in court during the week of June 6th due to illness. A doctor's certificate attached to said motion stated that Gammon was not physically able to appear in court and testify during the week of June 6, 1966. Gammon had not been subpoenaed, but it was alleged that appellants relied upon him being present and testifying in the case.

■■■■ Rule 252, Texas R.C.P., not only requires that an application for continuance because of the absence of a witness shall state the name and residence of such witness, but must also state what the movant expects to prove by said witness, and in such specific terms as to advise the court of the relevancy of such testimony. The mere fact that the witness was in a position to know facts does not imply that he would give such testimony as expected of him. While appellant's Emmco Insurance Company, application for continuance relates that Mr. Gammon was its adjuster and its agent who conducted the company's business with reference to the loss out of which this lawsuit arises; and that Mr. Gammon would testify to the dealings which he had with the appellee including, on behalf of Emmco, securing estimates to show the amount of loss payable under the policy in question and to demonstrate that the company did not prevent the repair of Mr. Burrows' truck and, therefore, had no cause of action for loss of use of the truck, yet there were no allegations of facts to which the witness would actually testify as being beneficial to Emmco's defense. In the absence of such specific allegations, the trial court's refusal to delay trial on the cause was not error. Especially so, in absence of the tender by affidavit or otherwise of the witness's testimony on motion for new trial. Davis v. National Acceptance Co., 233 S.W. 2d 321 (Tex.Civ.App., Dallas, 1950, writ ref., n. r. e.); Sovereign Camp, W.O.W. v.

Davis, 268 S.W. 523 (Tex.Civ.App., Galveston, 1924, writ ref.); Poe v. Hall, 241 S.W. 708 (Tex.Civ.App., Amarillo, 1922, n. w. h.); Hazelrigg v. Naranjo, 184 S.W. 316 (Tex.Civ.App., San Antonio, 1916, writ ref.); Wilson Finance Co. v. State of Texas, 342 S.W.2d 117 (Tex.Civ.App., Austin, 1960, n. w. h.). "The matter of granting a continuance rests within the sound discretion of the trial judge." Hernandez v. Heldenfels, 374 S.W.2d 196, 202 (Tex.Sup.Ct., 1964). The point of error as to the action of the court in overruling the application for continuance is overruled.

By the first three points of error here presented, it is contended that the trial court erred (1) "* * * in entering judgment for $400.00 as a reasonable charge for expenses incurred for the protection of the insured vehicle, because there were no pleadings to support the recovery of such expenditures"; (2) "* * * in submitting Special Issues Nos. 10 and 11, because there were no pleadings to support the submission of either of said issues, and, additionally, there was no evidence to support the submission of Special Issue No. 10"; (3) "* * * in overruling defendants' objections to plaintiff's testimony wherein he stated that it cost $400.00 to tow the insured vehicle from Virginia to Texas, because there were no pleadings to support the admission of such evidence."

In response to Special Issues Nos. 10 and 11, the jury found that it was necessary for the protection of the truck to have it towed to Dallas, Texas, from its location in Virginia and that a reasonable charge for such towing was $400.00.

Nowhere in appellee's pleadings is it alleged that it was necessary for the protection of his truck to have it towed to Dallas, and nowhere in the pleadings did the appellee allege the expenditure of or seek recovery for any amount spent for the protection of the truck. Provisions of the insurance policy sued upon do permit recovery of "protection expenses," but such provisions were not specifically alleged or re-

ferred to in the pleadings, and the policy was not attached to the pleadings.

The appellee testified that the truck was towed from Virginia to Dallas at a cost of $400.00, and appellants promptly objected to this testimony on the ground that it was irrelevant and that there also were no pleadings to support its admission. These objections were overruled. Also, appellants objected to the submission of Special Issues Nos. 10 and 11 on the ground that they were not supported by any pleadings and these objections were likewise overruled.

In his third amended original petition, appellee alleged that he was the assured under Emmco Insurance Company's policy No. 8500727–20 covering his GMC truck. He then set out his claim for damages to his truck and prayed for specific and general damages.

During the trial, appellee offered the insurance policy into evidence and the court so admitted it without objection from appellants. The policy contained a provision which stated that any reasonable expenses incurred by the assured in protecting the insured vehicle shall be deemed incurred at the company's request.

 It is now established that in a case brought upon a policy of insurance, in which the pleadings identify the policy and in which the policy is admitted into evidence without objection, the case is tried on the issues raised by the terms and provisions of the policy itself. American National Ins. Co. v. Fox, 184 S.W.2d 937 (Tex. Civ.App., Fort Worth, 1944, err. ref., w. o. m.). It is not necessary to the statement of a cause of action on an insurance policy that all provisions thereof be alleged. Robert E. Lee Life Ins. Co. v. Sanderson, 127 S.W.2d 993 (Tex.Civ.App., Eastland, 1939, n. w. h.); First National Life Ins. Co. v. Virgil Vititow, 323 S.W.2d 313 (Tex.Civ. App., Texarkana, 1959, dism., w. o. j.). Appellants' contention of the insufficiency of the pleadings in this respect is overruled.

However, to recover such expenses under the policy, they must be incurred to "protect" the truck. In this connection, the evidence reveals that the appellee contacted an agent of appellant and requested permission to bring the truck to Dallas and the agent said if that's what he (appellee) wanted to do, and he would pay the expenses in doing so, that would be all right. While testifying on the trial of this case, the appellee in response to a question if he thought it "necessary for the protection of the truck" that it be brought back to Dallas answered:

> "Yes, sir, because I couldn't find out what was going on out there. It had been several weeks and I was needing the truck."

The evidence shows that when plaintiff sent for the truck, it was already in the possession of Emmco Insurance Company at a GMC dealership in Richmond, Virginia.

 To recover "protection expenses" under the policy, it must be shown that the insured vehicle is in some position from which it must be moved to "protect" it. The mere fact that appellee (1) could not find out about his truck and (2) that he was in need of it is not probative evidence that the truck was in such a position that it was necessary to tow it to Dallas in order to protect it. Even though there were proper pleadings to support the recovery of "protection expenses," the submission of Special Issue No. 10 and the award of such expenses in the judgment were improper because there was no probative evidence that the tow charges were incurred to "protect" the truck, as required under the terms of the policy.

Appellants further contend that "The Trial Court erred in entering a declaratory judgment against Defendants, Associates Investment Company and Associates Discount Corporation, cancelling certain interest payments due said Defendants as holders of the installment note upon Plaintiff's truck."

The defendants (appellants), Associates Discount Corporation and Associates Investment Company, financed the truck and owned the installment note given by the appellee for its purchase. Monthly installment payments on the note were paid directly to Associates.

In his third amended original petition, appellee sought a "declaratory judgment action" against the Associates suspending certain interest payments due under the installment note. The pleadings in support of this cause of action are as follows:

"Plaintiff also seeks the declaratory judgment action of the court declaring that the installment payments due Associates Discount Corporation or Associates Investment Company are suspended for the months of July, August, September, 1965, and for each month thereafter pending final determination of this dispute with the court. Plaintiff has no control over the insurance company or the finance company, but respectfully shows that they act in consort in handling this claim and the equities involved demand that the installment payments of approximately $600.00 per month be suspended during the time plaintiff is deprived of his truck-tractor. * * *"

The trial court awarded the declaratory relief as prayed for. Appellants duly and timely preserved their point of error.

In their amended motion for new trial, the appellants complained of this portion of the judgment on the grounds (1) that declaratory relief was not available to rewrite a contract between the parties, and (2) because there was no evidence or any jury findings upon which to base such relief.

Under the Texas Uniform Declaratory Judgment Act[1], district courts are given the power to "construe" contracts and other instruments in writing, plus the power to "declare rights, status, and other legal relations".

As we understand the pleadings, appellee is asking the court to "construe" the installment note and then to "declare rights" thereunder based upon alleged "consort" between Emmco and Associates "in handling this claim." If this be the nature of the cause of action asserted, the decree of declaratory relief entered by the trial court is improper for any of the following reasons: (1) The installment note was not in evidence for the court to construe. The record does not reflect the introduction of the note in the evidence. It is impossible to "construe" an instrument and declare rights thereunder if the instrument to be construed is not in evidence. (2) From a careful examination of the entire record, we find no evidence that Emmco and Associates acted in consort. The only basis alleged for declaring the interest payments suspended was the contention that Emmco and Associates acted in "consort" in handling the claim. To "consort" means to act in union or in companionship. Saunders v. Kennedy, Sup., 154 N.Y.S.2d 523. There is no evidence in this record of any "union" or "companionship" between the appellants in the handling of appellee's claim. (3) This is not a proper case for declaratory judgment. In addition to the failure of the evidence to support the award, the decree of declaratory relief was improper for at least two additional reasons. First, it must be recognized that the Uniform Declaratory Judgment Act is only remedial in nature. Cowan v. Cowan, 254 S.W.2d 862 (Tex.Civ. App., Amarillo, 1952, n. w. h.). The purpose of the statute, as evidenced by its own terms, is to declare *existing* rights, status, or other legal relations. The statute cannot be invoked as an affirmative ground of recovery to revise, alter, or reform such rights, status or legal relations. As applied to contracts, the purpose of declaratory relief is to obtain an interpretation of the contract, and a decree in such a case may provide "only for a determination of the purposes intended by the instrument, and not a modification of its terms." 26

1. Article 2524–1, Vernon's Ann.Tex.St.

C.J.S. Declaratory Judgments § 162, p. 383. This point is illustrated in Baskind v. National Surety Corp., 376 Pa. 13, 101 A.2d 645 (Pa.Sup., 1954), where the plaintiff sought a declaratory judgment decreeing that he was insured under a policy issued to his daughter. The prayer for declaratory relief was denied, the court holding as follows:

"* * * The amended petition, in effect, prays for reformation of the insurance contract * * * To reform would not be declaring a right, status, or other legal relation. It is only after reformation that rights of the parties could be declared in respect to the reformed contract. The Act contemplates a declaration of rights, status, or other legal relation of any person interested under an existing instrument, statute, ordinance, contract, or franchise. Nowhere are the courts given the authority to reform an instrument in a declaratory judgment proceeding. Such a proceeding is limited to the adjudication of rights under existing documents or legislation as then written."

█ Second, declaratory relief is further inappropriate in this case because the only issue involved is purely a question of fact. Even though the installment note is not in evidence, appellee recognizes in his pleadings that the note obligates him to make certain interest payments. Associates does not dispute this fact, and there is no real dispute as to the existence or meaning of the contract. Therefore, the only thing to be resolved is the purely factual question of whether or not the defendants acted in "consort" so as to suspend the interest payments. If a factual dispute is the only issue to be resolved, a declaratory judgment is not the proper remedy. This point was made in Lincoln v. Harvey, 191 S.W.2d 764 (Tex.Civ.App., Dallas, 1945, n. w. h.), where the court held:

"Furthermore, it will be seen that the trial court had for determination the issue of fact as to whether the rental contracts were on a month-to-month basis, or for the duration of the war. Evidently such issue was purely a conflicting issue of fact, determinable only after judicial investigation in a regular trial by a court or jury. A declaratory judgment on purely fact questions cannot be the basis for action of the court on regular trial in determining the rights of the parties. * * *"

Appellants' Point of Error No. 5 is sustained.

Appellants, by Points of Error Nos. 6, 7 and 8 complain that the trial court erred (1) "* * * in overruling Defendants' objections to Plaintiff's testimony regarding the reasonable value of the insured vehicle in Virginia immediately before the collision, because the record reflects that such evidence was based upon hearsay and that Plaintiff was not qualified to give such testimony"; (2) "* * * in overruling Defendants' objections to Plaintiff's testimony regarding the reasonable value of the insured vehicle in Virginia immediately after the collision, because voir dire examination revealed that Plaintiff was not qualified to give such testimony"; (3) "* * * in overruling Defendants' objections and exceptions to Special Issue No. 1, because there was no probative evidence to support the submission of said issue."

Special Issue No. 1 inquired of the jury what the reasonable cash market value of the plaintiff's truck was in the state of Virginia immediately prior to and immediately after the collision. The only testimony regarding the market value of the truck in Virginia came from appellee who, after stating that he was familiar with the value of his 1963 GMC truck, said that its value immediately before the collision was $13,500.00, while its value immediately after the accident was $1,200.00.

The appellee testified that he had been in the trucking business 23 years; that during the time he had been in the trucking business, he had operated all kinds of trucks from gasoline to diesel; that he had bought

and sold trucks and trailers all through the years that he had been in business; that he had always done his own negotiating and contracting and had always used his own judgment as to what was a fair price for a truck and whether he should buy it or not; that he had had occasion to study the value of trucks in this and other states and had kept himself abreast of the reasonable value of the kind of trucks he had owned and operated through the years; that he had been in and out of garages in Virginia many, many times and had watched trucks there being repaired, bought and sold. Appellee further testified that in his experience in the past years, he has learned that the reasonable value of trucks like he has operated is the same in Virginia as it is in Rusk County, Texas, or in Dallas County; that the equipment he has used is standardized by the factory and they all use practically the same equipment; that he had operated GMC trucks through the years and this truck was a piece of equipment with which he was familiar; that he had been in Virginia a couple of weeks before the wreck; that he was in the market for a truck on that particular trip and had discussed the values of trucks with a Mr. Bolton in Virginia a short time before the accident, and that he had been in a dealer's place in Richmond, Virginia a month before that and discussed the values of some 1963 diesels that they had there. He also testified that at the time of the wreck and at all times previous, he was familiar with the reasonable cash market value of trucks of this kind in the state of Virginia and that the reasonable cash market value of his truck in Virginia immediately before and immediately after the wreck was the same in Virginia as it was in Rusk County, Texas. On voir dire examination, the appellee testified that he did not know the condition of the truck immediately after the accident, except what he was told over the telephone. The first time he saw the truck after the accident was in Texas about a month after the accident.

In the case of Cortez v. Mascarro, 412 S.W.2d 342 (Tex.Civ.App., San Antonio, 1967, n. w. h.), the court stated:

"Where the issue relates to the value of chattels, the test determining competency is liberally applied, with few attempts to lay down detail tests, and this liberality is increased where the witness is also the owner of the article in question. Thus, it has been suggested by an imminent authority that the owner of a chattel, 'whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth,' leaving the weight of his testimony to be determined by the trier of fact. 3 Wigmore, Evidence, § 716, p. 48 (1940). * * *

"It is well settled that the qualification of a witness to testify on the question of value is primarily to be determined by the trial court, and the ruling of the trial judge will not be disturbed on appeal unless it is so clearly wrong as to show an abuse of discretion. Slack v. Magee Heirs, 252 S.W.2d 274 (Tex.Civ.App., 1952, aff'd., 152 Tex. 427, 258 S.W.2d 797). The fact that the asserted knowledge of the witness is based on information furnished him by others does not deprive his testimony of probative force. Webb v. Mitchell, 371 S.W.2d 754 (Tex. Civ.App., 1963, no writ)." See Calvert Fire Ins. Co. v. McClintic, 267 S.W.2d 568, (Tex.Civ.App., Waco, 1954, writ ref., n. r. e.) and Emmco Insurance Company v. Waters, 413 S.W.2d 484 (Tex.Civ. App., Tyler, 1967, writ ref., n. r. e.).

As stated in the Cortez case, in view of the liberal rules applied in cases of this nature, we cannot say that the trial court abused its discretion in receiving the appellee's value testimony and in basing its judgment thereon. Appellants' Points 6 and 7 are overruled.

We have examined this record in the light of the rule announced by our Supreme Court in In re: King's Estate, 150 Tex. 662, 244 S.W.2d 660, and find sufficient

evidence to support the submission of Special Issue No. 1 to the jury. Accordingly, appellants' Point of Error No. 8 must be overruled.

We have also considered appellants' Point of Error No. 4 and, finding it without merit, the same is likewise overruled.

That part of the judgment awarding to appellee the sum of $400.00 as expenses for protection of the truck and granting to appellee the relief he sought by way of a declaratory judgment is reversed and rendered. The judgment in all other respects is affirmed.

Judgment reversed and rendered in part and affirmed in part.